IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

EMMA COCHRAN,                        )
                                     )
        Plaintiff,                   )
                                     )
v.                                   ) Civil No. 12-2449-JDT-tmp
                                     )
CITY OF GERMANTOWN,                  )
                                     )
        Defendant.                   )
_____

REPORT AND RECOMMENDATION
_____

Before this court is the Motion for Summary Judgment of defendant City of Germantown ("the City"), filed January 3, 2014. (ECF No. 23.) Plaintiff Emma Cochran did not file a response, and the court entered an order to show cause why the defendant's motion should not be granted. (ECF No. 24.) Cochran then filed a two-page response on February 10, 2014. (ECF No. 25.) The City then filed a reply. (ECF No. 26.) For the reasons below, it is recommended that the City's motion for summary judgment be granted.

I.    PROPOSED FINDINGS OF FACT

As an initial matter, the City has submitted a statement of undisputed material facts along with its motion for summary judgment. (ECF No. 23-9.) Cochran's response, however, fails

to comply with the Local Rules of this court. The Local Rules provide the following:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

Local Rule 56.1(b). In response to the City's motion and statement of undisputed facts, Cochran has submitted a two-page response in narrative form. Because Cochran has failed to respond as provided by the Local Rules, the court will consider only the City's statement of undisputed material facts for the purpose of deciding the instant motion. See Lee v. Swift Transp. Co. of Ariz., LLC, No. 2:12-cv-02230-JTF-tmp, 2014 WL 897407, at *2 (W.D. Tenn. Mar. 6, 2014) ("Moreover, [plaintiff's] statement does not comply with Local Rule 56.1(b) . . . . Therefore, the court will rely on Defendant's Statement of

- 2 -

Material Facts in deciding the instant motion."); <u>Iqbal v. Pinnacle Airlines, Inc.</u>, 802 F. Supp. 2d 909, 914-15 (W.D. Tenn. 2011) (deeming as undisputed facts to which plaintiff did not respond as required by the local rules); <u>Goodbar v. Technicolor Videocassette of Mich., Inc.</u>, No. 09-2553, 2010 WL 5464796, at *2 n.5, 6 (W.D. Tenn. Dec. 30, 2010); <u>Akines v. Shelby Cnty. Gov't</u>, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007); <u>U.S. Liability Ins. Co. v. NTR, Inc.</u>, No. 06-2159B/A, 2007 WL 1461660, at *1 n.1 (W.D. Tenn. May 16, 2007); <u>Thornton v. Fed. Express Corp.</u>, No. 05-2247, 2007 WL 188573, at *2 n.2 (W.D. Tenn. Jan. 22, 2007).

1. Cochran, who is African-American, worked as a part-time Building Service Worker from September 2003 until November 5, 2007, at which time she became a full-time employee. (Dep. of Emma Cochran, excerpts of which are attached to Defendant's Motion and marked as Ex. 1, pp. 31, 36; Aff. of Reynold Douglas, attached to Defendant's Motion and marked as Ex. 2, ¶ 5.)

2. The essential duties of the position of Building Service Worker are as follows: sweep, mop, and polish floors; vacuum and shampoo carpets; remove trash and other refuse from buildings; clean offices and park facility restrooms and replenish supplies; dust equipment, furniture, and fixtures; wash walls and windows as scheduled; sweep sidewalks and remove trash and other debris from around buildings and dumpster bins;

water and dust indoor plants; use plunger to unstop sinks and toilets; and deliver supplies to other departments as requested. (Ex. 1, p. 36-39, 39; Ex. 2, ¶¶ 21-22; Cochran's job description is attached to Defendant's Motion and marked as Ex. 3.)

3. Cochran's immediate supervisor when she worked on the first shift (7 a.m. to 3 p.m.) was Starry Stigger. (Ex. 1, p. 28; Ex. 2, ¶ 9.)

4. Cochran's immediate supervisor when she worked on the second shift (3 p.m. to 11 p.m.) was Margaret Williams. (Ex. 2, ¶ 9.)

5. Stigger and Williams are African-American. (Ex. 2, ¶¶ 10, 12.)

6. Stigger and Williams, both of whom are working supervisors, report to Reynold Douglas, who is African-American and holds the position of Facilities Services Manager of the Building Maintenance Department. (Ex. 2, ¶¶ 6, 11, 13.)

7. Cochran reported sustaining an on-the-job injury (closed fracture of left wrist) as a result of a fall while working on the second shift on May 8, 2008. (Ex. 2, ¶ 23.)

8. Surgery was necessary as a result of said injury, and Cochran was not able to work for a period of time prior to surgery due to her injuries and uncontrolled hypertension. (Ex. 1, p. 51; Ex. 2, ¶ 24.)

9. The City does not have full-time "light duty" positions. (Ex. 4, ¶ 6.) If an employee is temporarily unable to perform the essential duties of his/her position but is released by his/her physician to return to work with restrictions, there is no guarantee that the employee will be permitted to return to work. (Ex. 4, ¶ 7.) A review of the information provided by the employee and his/her physician will be undertaken, together with a review of the positions in the employee's department in order to determine whether there is a position available for which the employee is qualified and physically able to perform. (Ex. 4, ¶ 8.) If there is a position in the employee's department that is temporarily available for which the employee is qualified and physically able to perform, the employee will be considered for that temporary position. (Ex. 4, ¶ 9.) The City does not create new positions for employees with temporary physical limitations and does not transfer an employee with temporary physical limitations to another department. (Ex. 4, ¶¶ 10-11.) If the restrictions imposed by an employee's physician are so limiting that there is no temporary position available in the employee's department for which the employee is qualified and physically able to perform, the employee is required to provide a physician's release when such limitations are no longer applicable confirming that the employee is able to return to

work before the employee will be permitted to return to work. (Ex. 4, ¶ 12.)

10. According to the information provided by Cochran and her physician, as of August 19, 2008, she was not able to lift more than twenty pounds with her left arm. (Ex. 2, ¶ 25; Aff. of Ricky Robbins, Safety and Training Coordinator for the City of Germantown and the individual responsible for overseeing all workers' compensation claims involving Germantown employees, a copy of which is attached to Defendant's Motion and marked as Ex. 4, ¶ 23; Cochran's medical records relating to the May 8, 2008 accident, with confidential information redacted, are attached to Defendant's Motion and marked as Ex. 4A.)

11. A review of the information provided by Cochran and her physician was undertaken, together with a review of Cochran's job description, the duties of her position, and the positions available in the Building Maintenance Department, in order to determine whether there was an available position in that department for which Cochran was qualified and physically able to perform. (Ex. 2, ¶¶ 26, 27; Ex. 4, ¶ 22.)

12. Although there was no available full-time position in the Building Maintenance Department that would accommodate those restrictions, when Cochran returned to work on August 19, 2008, she was permitted to perform a temporary light duty assignment,

dusting. (Ex. 1, pp. 52, 69, 179-80, 199, 287; Ex. 2, ¶¶ 27, 31; Ex. 4, ¶¶ 25, 29.)

13. After having surgery on her left wrist on September 30, 2008, Cochran's physician released her to return to work on October 14, 2008, with the restriction that she not lift more than ten pounds with her left arm. (Ex. 2, ¶¶ 32-33; Ex. 4, ¶¶ 30-32; Ex. 4A.)

14. Cochran was permitted to perform light duty upon her return to work on October 14, 2008, which involved only dusting. (Ex. 2, ¶ 34; Ex. 4, ¶ 34.)

15. Although Cochran's physician modified her left hand restrictions on December 9, 2008 (increasing the ten pound limitation to a forty pound limitation), Cochran continued to be permitted to perform only dusting duties until she was released by her physician to return to work with no restrictions on January 13, 2009. (Ex. 1, p. 52; Ex. 2, ¶ 35; Ex. 4, ¶ 35; Ex. 4A.)

16. Cochran was permitted to return to work, without restrictions, on January 13, 2009. (Ex. 2, ¶ 36; Ex. 4, ¶ 37.)

17. After Cochran returned to work, she advised Douglas and others that she was experiencing pain in her right hand. She thought that the pain was caused by the light duty work she had been performing, because she could not use her left hand and

was "overcompensating" with her right hand.  (Ex. 1, pp. 87, 90, 119; Ex. 2, ¶ 37.)

18.  Cochran had a second surgery on her left wrist on March 4, 2009, and was not able to work for more than a month after her surgery.  (Ex. 1, p. 85; Ex. 2, ¶¶ 38-39; the medical records relating to the second surgery and the follow up treatment, with confidential information redacted, are attached to Defendant's Motion and marked as Ex. 4B.)

19.  Cochran met with Ricky Robbins on March 31, 2009, and complained about her right hand pain and indicated that she thought that her light duty was responsible for the pain as she was "overcompensating" since she could not use her left hand.  (Ex. 1, pp. 87, 90; Ex. 4, ¶ 42; Cochran's handwritten note confirming this meeting is attached to Defendant's Motion and marked as Ex. 5.)

20.  On April 3, 2009, Cochran met with Patrick Lawton, the City Administrator, and asked about "getting my right arm checked."  (Ex. 1, p. 87; Ex. 4, ¶ 43; Ex. 5.)

21.  Cochran's physician issued work restrictions for her on April 16, 2009, indicating that she could only perform sedentary work; that she could not use her left arm; and that she was limited to pushing, pulling, or lifting no more than ten pounds with her right arm.  (Ex. 4, ¶ 44; a copy of the medical records relating to the follow-up treatment after Cochran's

second surgery and the medical restrictions, with confidential information redacted, are attached to Defendant's Motion and marked as Ex. 4C.)

22. Based upon the physician's restrictions and Cochran's comments to Robbins about dusting causing injury or discomfort in her right hand, there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform and to which she could be assigned. Nor were there any other modifications that could be made to her existing duties that Cochran was physically able to perform. (Ex. 4, ¶ 46.)

23. Robbins discussed the restrictions imposed by Cochran's physician, along with Cochran's complaints regarding her right hand pain and her belief that it was caused by "overcompensating" while performing her light duty, with Pat McConnell, the Personnel Director at that time, and Douglas. (Ex. 4, ¶¶ 49-50.)

24. Douglas advised McConnell that there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform to which she could be temporarily assigned, and that Cochran had reported to him that she was not able to perform dusting without experiencing pain or discomfort. (Ex. 2, ¶ 46; Ex. 4, ¶ 51.)

25. McConnell advised Douglas and Robbins that, in view of the information being provided by Cochran and her physician and the absence of available positions or duties that could be assigned to Cochran, consistent with City policy, Cochran would be required to provide a release from her physician that she could perform her duties in a way that would not cause her to overcompensate and further injure herself before she could return to work. (Ex. 2, ¶ 47; Ex. 4, ¶ 52.)

26. Cochran was released by her physician to return to work full duty with no restrictions on July 22, 2009, and was allowed to return to work that day. (Ex. 1, pp. 99, 100; Ex. 2, ¶¶ 48-49; Ex. 4, ¶¶ 53-55; Ex. 4C.)

27. After being restricted by her physician between October 5 and October 13, 2009, Cochran's physician released her to full duties, without restrictions, on October 14, 2009, and she was permitted to return to work that day. (Ex. 1, p. 104; Ex. 4, ¶¶ 56-58; Ex. 4C.)

28. On February 8, 2010, Cochran reported muscle spasms in both arms, which she reported as being caused by her work duties. (Ex. 2, ¶ 52; Ex. 4, ¶ 59.)

29. On February 18, 2010, Cochran's physician restricted her to lifting, pushing, or pulling no more than five pounds as to her right hand. (Ex. 4, ¶ 61; copies of Cochran's medical records pertaining to her treatment during the first five months

of 2010, with confidential information redacted, are attached to Defendant's Motion and marked as Ex. 4D.)

30. On March 4, 2010, Cochran's physician restricted her to no use of her right arm. (Ex. 2, ¶ 54; Ex. 4, ¶ 62; Ex. 4D.)

31. Due to this restriction and in light of Cochran's complaints, there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform and to which she could be assigned, including performing dusting only duties. (Ex. 2, ¶ 55; Ex. 4, ¶ 64.)

32. On March 29, 2010, Cochran's physician restricted her to lifting, pushing, or pulling no more than one pound with her right arm and prohibited her from any repetitive movements of her arms. (Ex. 2, ¶ 56; Ex. 4, ¶ 65; Ex. 4D.)

33. Due to this restriction and in light of Cochran's complaints, there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform and to which she could be assigned, including performing dusting only duties. (Ex. 2, ¶ 59; Ex. 4, ¶ 67.)

34. On April 22, 2010, Cochran's physician restricted her to lifting, pushing, or pulling no more than two pounds with her right arm and prohibited her from any repetitive movements of her arms. (Ex. 2, ¶ 58; Ex. 4, ¶ 68; Ex. 4D.)

35. Due to this restriction and in light of Cochran's complaints, there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform and to which she could be assigned, including performing dusting only duties. (Ex. 2, ¶ 59; Ex. 4, ¶ 70.)

36. On May 27, 2010, Cochran had a functional capacity evaluation done by Worksite Consultants. (Ex. 4, ¶ 71; a copy of this evaluation is attached to Defendant's Motion and marked as Ex. 4E.)

37. The recommendation of Worksite Consultants was as follows: "Based on objective testing, we would not have any restrictions to assign Ms. Cochran. We feel she can safely return to her job if she desires to do so. If she does not want to return back to her regular work duties, she can independently seek other work of her choice." (Ex. 4, ¶ 73; Ex. 4E.)

38. On June 4, 2010, Cochran's physician released her to full duties, without restrictions, as of June 7, 2010, and she returned to work on June 7, 2010. (Ex. 1, p. 126; Ex. 2, ¶¶ 60-61; Ex. 4, ¶¶ 74-76; a copy of the medical record for June 4, 2010, and the medical report releasing her to regular duty on June 10, 2010, with confidential information redacted, are attached to Defendant's Motion and marked as Ex. 4F.)

39. Cochran obtained a second opinion from another physician, who released her to full duties, without restrictions, on July 7, 2010. (Ex. 2, ¶ 62; Exh 4, ¶ 77; a copy of the July 7, 2010 medical record for Cochran, with confidential information redacted, is attached to Defendant's Motion and marked as Ex. 4G.)

40. Cochran called in sick on July 8, 2010, but was permitted to work, without restrictions, on July 9, 2010. (Ex. 2, ¶ 63; Ex. 4, ¶ 79.)

41. Cochran signed a return-to-work form on August 12, 2010, confirming that she had been released to return to work that day, but she wrote a note on the form stating, "I feel that I should have restrictions because both of my arms are getting worse." (Ex. 2, ¶ 64; Ex. 4, ¶ 80; a copy of the return-to-work form with Cochran's note is attached to Defendant's Motion and marked as Ex. 4H.)

42. Cochran took sick leave and vacation leave during part of August 2010. (Ex. 2, ¶ 66; Ex. 4, ¶ 82.)

43. Cochran saw another physician who released her to full duties, without restrictions, on September 9, 2010, and she was permitted to return to work that day.[1] (Ex. 1, pp. 216, 294; Ex. 2, ¶¶ 67-68; Ex. 4, ¶¶ 83-85; a copy of the release form, with

---

[1]Cochran also wrote a note on this return-to-work form stating, "My doctor said that I need restrictions but he cannot write them because of [illegible]."

confidential information redacted, is attached to Defendant's Motion and marked as Ex. 4I.)

44. Cochran did not report for work on September 10, 2010. (Ex. 2, ¶ 69; Ex. 4, ¶ 86.)

45. Cochran did not work after September 9, 2010. (Ex. 1, pp. 143, 235-36; Ex.2, ¶ 70; Ex. 4, ¶ 87.)

46. Regular attendance is an essential job function of the position of Building Services Worker. (Ex. 1, pp. 47, 265; Ex. 2, ¶ 71; Ex. 4, ¶ 88.)

47. After having failed to work for more than two weeks since being released by her physicians, Cochran was terminated on September 27, 2010. (Ex. 1, pp. 235-36; Ex. 4, ¶ 89.)

48. None of the Caucasian male employees with whom Cochran seeks to compare herself worked as Building Maintenance workers or reported to Stigger or Douglas. (Ex. 1, pp. 60, 61, 62, 161-62, 189, 192-99, 207, 226, 310; Ex. 4, ¶¶ 93-152; Aff. of William B. "Bo" Mills, attached to Defendant's Motion and marked as Exhibit 6, ¶¶ 16-18, 22-24, 27-29, 35-37, 39-41, 44-46, 49-51, 53-55, 60-62.)

49. Margaret Williams, who is African-American and worked in the Building Maintenance Department and reported to Douglas, sustained an on-the-job injury and was permitted to work light duty by having her duties temporarily modified until she was

released by her physician to return to full duty. (Ex. 1, pp. 26, 221, 287; Ex. 2, ¶ 84; Ex. 4, ¶¶ 101-02.)

50. Cochran testified during her deposition that she is not aware of any male or Caucasian employee who was released by his/her physician to return to work full duty, with no restrictions, did not report to work, and was treated differently than herself. (Ex. 1, p. 165.)

51. On October 4, 2010, Cochran filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City. She claimed in the charge that she was injured on the job on May 8, 2008, and that on February 18, 2010, and later on April 22, 2010, she returned to work with restrictions and was denied light duty assignments. (ECF No. 1-2.) She also alleged that on September 27, 2010, she was discharged due to her attendance. (ECF No. 1-2.) She alleged discrimination based on her race, sex, and disability. (ECF No. 1-2.)

52. On June 8, 2012, Cochran filed a complaint with this court, attaching her EEOC charge. (ECF No. 1.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "(t)he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "The moving party bears the initial burden of production." Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "(I)f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). "The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Palmer, 429 F. App'x at 495 (quoting Anderson, 477 U.S. at 251-52) (internal quotation marks omitted).

**B.   § 1983 Claim**

Cochran's complaint is titled "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983." Under § 1983, "an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, or immunities secured by the Constitution or conferred by federal statute." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012) (citing Blessing v. Freestone, 520 U.S. 329, 340 (1997)). It is recommended that the City be granted summary judgment on Cochran's § 1983 claim because it is time-barred, and she has not presented sufficient evidence to raise a genuine issue for trial.

1.   § 1983 Claim is Time-Barred

As § 1983 does not set forth a statute of limitations, federal courts apply the state personal injury statute of limitations for actions under § 1983. See Moore v. Potter, 47 F. App'x 318, 320 (6th Cir. 2002); Commodore v. Williams, No. 12-2957-JDT-tmp, 2014 WL 28833, at *3 (W.D. Tenn. Jan. 2, 2014). The appropriate statute of limitations for personal injury actions arising in Tennessee under § 1983 is one year. See Tenn. Code Ann. § 28-3-104(a)(3); Merriweather v. City of Memphis, 107 F.3d 396, 398 (6th Cir. 1997); Jacox v. City of Memphis, No. 12-2337-JDT/dkv, 2013 WL 5937965, at *3 (W.D. Tenn. Nov. 5, 2013). The determination of when a § 1983 cause of action accrues is

determined by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  "Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim."  A to Z, Inc. v. City of Cleveland, 281 F. App'x 458, 460 (6th Cir. 2008); Fox v. DeSoto, 489 F.3d 227, 233 (6th Cir. 2007).

The City's alleged wrongful conduct occurred between February 2010, and September 27, 2010, at which time Cochran was terminated.  Cochran filed her complaint on June 8, 2012. Cochran waited more than a year after suffering the discriminatory conduct and being terminated to file suit, and as such, her § 1983 claim is time-barred.  See Jacox, 2013 WL 5937965, at *3 (dismissing § 1983 claims brought more than a year after injury was suffered); Jones v. Hall, No. 3:10-cv-247, 2011 WL 4431132, at *2 (E.D. Tenn. Sept. 22, 2011) (same).

### 2.   § 1983 Claim Fails

Even if Cochran's § 1983 claim were not time-barred, the City is nevertheless entitled to summary judgment on that claim. While a municipality may be held liable under § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability upon a municipality for the constitutional torts of its employees.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694-95 (1978).  In order to state a claim against the City under § 1983, Cochran

must show that her alleged injuries were caused by an unconstitutional "policy or custom" of the municipality. Bd. of Comm'rs of Bryan Cnty., Okla. v. Brown, 20 U.S. 397, 403 (1997); City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Miller v. Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005). Cochran must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged;" it may not be held liable on a *respondeat superior* theory. Brown, 520 U.S. at 403-04; see also Monistere v. City of Memphis, 115 F. App'x 845, 850 (6th Cir. 2004). "A plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." Brown v. City of Memphis, 921 F. Supp. 2d 865, 868 (W.D. Tenn. 2013) (quoting Ford v. Cnty. of Grand Traverse, 535 F.3d 483, 495 (6th Cir. 2008)). Cochran has offered no evidence of any policies or customs of the City that would make the City liable under § 1983. Therefore, even if the § 1983 claim were not time-barred, the City is entitled to summary judgment on that claim. See, e.g., Oliver v. City of Memphis, No. 04-2074B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004) (dismissing § 1983 claim because the plaintiff "completely failed to identify or allege the existence of a custom or policy of the city that caused his injury").

**C.    Title VII Sex & Race Discrimination Claims**

In her original EEOC charge, Cochran stated that she believed she had been discriminated against on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for an employer to discriminate against individuals based on their race, color, sex, religion, or national origin. 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, a plaintiff must first establish a *prima facie* case of discrimination to make a claim under Title VII. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for the employment decision. <u>Briggs v. Potter</u>, 463 F.3d 507, 514 (6th Cir. 2006). Should the defendant meet its burden of production, the burden shifts back to the plaintiff "to identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." <u>Blair v. Henry Filters, Inc.</u>, 505 F.3d 517, 524 (6th Cir. 2007). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000).

1. *Prima Facie* Case Not Established

A plaintiff usually establishes a *prima facie* case of discrimination under Title VII by showing that he (1) is a member of a protected group; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) a similarly situated, non-protected employee was treated more favorably. Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002); Primes v. Reno, 190 F.3d 765, 766 (6th Cir. 1999).

With regard to the second and third prongs of her *prima facie* case, Cochran cannot demonstrate that there was even an available position for which she suffered an adverse employment action or for which she was qualified. In February and April 2010, Cochran was under work restrictions imposed by her physician that prevented her from being able to perform her job or the light duty assignment of dusting. The City had previously allowed her to dust as light duty work, and only stopped offering her the light duty assignment after she complained about experiencing pain. Even after physicians cleared her to return to work full duty with no restrictions, Cochran failed to show up for work and insisted on being given an essentially sedentary job. The City does not create new positions for employees with temporary physical limitations and does not transfer an employee with temporary physical limitations to another department. If the restrictions imposed by an employee's physician are so limiting that there is no

temporary position available in the employee's department for which the employee is qualified and physically able to perform, the employee is required to provide a physician's release when such limitations are no longer applicable confirming that the employee is able to return to work before the employee will be permitted to return to work.  Here, the evidence demonstrates that the City acted according to its policy by not offering Cochran a new "position" of essentially sedentary work.

In addition, Cochran cannot establish the fourth element of the *prima facie* case.  "To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar 'in all of the relevant aspects." Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 412 (6th Cir. 2008) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)).  "To be 'similarly situated,' employees generally must 'have dealt with the same supervisor' and 'have been subject to the same standards.'" Curry v. SBC Commc'ns, Inc., 669 F. Supp. 2d 805, 826 (E.D. Mich. 2009) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).  The similarly situated employees must also "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Davis v. FedEx Corporate Servs., Inc., No. 11-2902, 2014 WL 1216518, at *8

(W.D. Tenn. Mar. 24, 2014) (quoting <u>Hollins v. Atl. Co., Inc.</u>, 188 F.3d 652, 659 (6th Cir. 1999)).

During her deposition, Cochran identified eight white male employees who she claims were given light duty – Timothy Streety, Charles Veglio, Jason Stevens, Brad Mich, Kinney Spray, Mike Sorenson, Phillip White, and Donald Shepard.[2] The City attached to its motion for summary judgment affidavits of Ricky Robbins, Safety and Training Coordinator for the City, and Bo Mills, the Director of Public Services for the City. According to Robbins and Mills, none of the employees named by Cochran held the position of Building Maintenance Worker, none reported to Cochran's supervisors, and none had work duties similar to those of Cochran. (Ex. 4, ¶¶ 94-97, 104-105, 108-110, 116-118, 120-122, 125-127, 130-132, 134-136, 141-143; Ex. 6, ¶¶ 7-9, 16-19, 22-24, 27-29, 35-37, 39-41, 44-46, 49-51, 53-55, 60-62; Ex. 6A-G). The court concludes, therefore, that Cochran has not presented sufficient evidence from which a reasonable juror could find that any of the white male employees named by Cochran were similarly situated.

---

[2]In filings with the court, Cochran also names Brant Morgan, Danny Hutcheson, and Josh Walker as employees she suspects were permitted to perform light duty work. However, the Statement of Undisputed Facts submitted by the City lists only Streety, Veglio, Stevens, Mich, Spray, Sorenson, White, and Shepard as the proposed comparators, and Cochran does not dispute that fact.

Furthermore, the City has offered proof that none of the named employees were treated more favorably than Cochran. Robbins and Mills stated in their affidavits that when Timothy Streety sustained an on-the-job injury in 2008 that necessitated surgery, there was no light duty position in the Public Works Department that he was able to perform and he was not permitted to return to work until he was released by his physician to full duty. (Ex. 4, ¶¶ 98-99; Ex. 6, ¶¶ 16-21.) When Brad Mich and Mike Sorenson sustained on-the-job injuries, both were released by their physicians to full duties. (Ex. 4, ¶¶ 123-24, 130-133; Ex. 6, ¶¶ 39-43, 49-52.) When Charles Veglio sustained an on-the-job injury in 2008, he was assigned temporary light duty (as Cochran was) and temporarily performed such duties without any mention of physical pain or discomfort before returning to his regular duties. (Ex. 4, ¶¶ 109-115; Ex. 6, ¶¶ 27-34.) Robert Morgan and Kinney Spray were not temporarily assigned light duty. (Ex. 4, ¶¶ 106-107; 125-129; Ex. 6, ¶¶ 22-26, 44-48.) Phillip White was temporarily assigned to answer telephones, but not as the result of light duty or any on-the-job injury. (Ex. 1, pp. 60, 69-70.) Rather, White's temporary assignment to telephone duty was due to the temporary absence of the receptionist in White's department, the Public Services Department, and the desire to avoid hiring a temporary employee. (Ex. 4, ¶¶ 134-140; Ex. 6, ¶¶ 53-59.) Unlike the Public

Services Department, there is no receptionist position in Cochran's Building Maintenance Department. (Ex. 1, pp. 61-62, 117; Ex. 2, ¶ 42.) Donald Shepard sustained an on-the-job injury in 2007, but returned to full duty after nine days and was not assigned any light duty work on a temporary basis. (Ex. 4, ¶ 144; Ex. 6, ¶¶ 60-63.) When Shepard sustained an on-the-job injury in 2008, he was assigned to light duty on a temporary basis to an available position. However, when he complained about the light duty and said that he was able to resume his regular duties and was allowed to do so and then complained about pain, he was not permitted to return to work until released by his physician to full duty, without restrictions. (Ex. 4, ¶¶ 145-149; Ex. 6, ¶¶ 64-68.) Finally, with regard to Cochran's termination in September 2010, it is undisputed that no male or white employee who was released by his or her physician to return to work full duty, with no restrictions, and did not report to work, was treated differently than Cochran.

Based on the foregoing evidence presented by the City, the court concludes that Cochran cannot establish that any similarly situated employees were treated more favorably, and therefore recommends that the City be granted summary judgment on Cochran's Title VII claims.

2.   Legitimate, Non-Discriminatory Reason and Pretext

Even if Cochran had successfully established a *prima facie* case of Title VII discrimination, the City would still be entitled to summary judgment on the Title VII claims because the City has offered a legitimate, non-discriminatory reason as to why Cochran was not provided light duty work. The City has offered proof that there was no available position in the Building Maintenance Department for which Cochran was qualified and physically able to perform and to which she could be assigned; nor were there any other modifications that could be made to her existing duties that Cochran was physically able to perform. (Ex. 4, ¶ 46.) As discussed above, the City followed its policies in deciding not to create a new position for Cochran or transfer her to another department. For the same reasons discussed above describing the deficiencies of the *prima facie* case, the court finds that no reasonable juror could conclude that the City's preferred reason for refusing Cochran light duty work was pretext for discrimination.

**D.    Americans with Disabilities Act Claim**

In her original EEOC charge, Cochran stated she believed she had also been discriminated against in violation of the American with Disabilities Act ("ADA"). In order to establish a claim for disability discrimination under the ADA, a plaintiff must prove: (1) that she is disabled, (2) that she is "otherwise qualified" to perform the job requirements with or without

reasonable accommodation, and (3) that her employer either refused to make a reasonable accommodation for her disability or subjected her to an adverse employment decision solely on the basis of her disability. Bratten v. SSI Servs., Inc., 185 F.3d 625, 632 (6th Cir. 1999); Cassidy v. Detroit Edison Co., 138 F.3d 629, 633 (6th Cir. 1998); Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996). Here, the accommodation Cochran sought was to place her in a light duty position that did not exist.[3] "[A]n employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job . . . However, this duty does not require employers 'to create new jobs [or] displace existing employees from their positions . . . in order to accommodate a disabled individual.'" Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007) (quoting Burns v. Coca-Cola Enters., Inc., 222 F.3d 247, 257 (6th Cir. 2000)); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 457 (6th Cir. 2004). Nor must an employer "waive legitimate, non-discriminatory employment policies" to accommodate the disabled individual. Burns, 222 F.3d at 257. Therefore,

---

[3]According to the City, Cochran testified during her deposition that she is no longer challenging her termination, and that she has essentially withdrawn any claims relating to her termination. (Def.'s Statement of Undisputed Facts ¶ 50.) The court need not address the City's argument regarding whether Cochran has withdrawn her termination claim because the court concludes that the City is entitled to summary judgment on those claims.

Cochran cannot make out a claim under the ADA, and the City is entitled to summary judgment on this claim.

### III. RECOMMENDATION

For the above reasons, it is recommended that the City's motion for summary judgment be granted.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

May 29, 2014
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY=S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**